IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-CV-323-MR-WCM

| | | |
|---|---|---|
| 5-STAR ATHLETE, DEVELOPMENT, LLC, | ) ) ) | |
| Plaintiff, | ) ) | MEMORANDUM AND RECOMMENDATION |
| v. | ) ) | |
| CITY OF SHELBY, NORTH CAROLINA, | ) ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on Defendant's Motion to Dismiss (Doc. 3), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.    Background

### A. Relevant Procedural History

On October 28, 2021, Plaintiff 5-Star Athlete Development, LLC ("Plaintiff") filed a Complaint alleging violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* (the "FHA"), the North Carolina Fair Housing Act, N.C.G.S. § 41A-1, *et seq.* (the "State FHA"), and "state and federal civil conspiracy laws." Doc. 1. Plaintiff seeks various types of relief including compensatory and punitive damages. Id. at 25.

1

On December 20, 2021, the City of Shelby ("Defendant") filed the Motion to Dismiss and a supporting memorandum. Docs. 3, 4. Plaintiff has responded, and Defendant has replied. Doc. 5, 6.

## B. Plaintiffs' Allegations

Plaintiff's Complaint alleges, in relevant part, as follows:

Plaintiff is "a wholly minority owned company with its President being an African-American male." Doc. 1 at ¶ 101.[1]

In 2017, Defendant presented an Economic Development Strategic Plan (the "Plan") to the public identifying the need for more diversity, more opportunities to integrate the entire community, and more multifamily residential housing units. Id. at ¶¶ 4-9.

In early 2019, and in response to the Plan, Plaintiff purchased real property located at 1607 E. Dixon Boulevard in Shelby, North Carolina (the "Dixon Property"). Id. at ¶¶ 10-13. Plaintiff intended to build a residential development on the Dixon Property consisting of eleven 3-bedroom townhouse units (the "Development"). Id. at ¶¶ 17, 18, 33. At the time of Plaintiff's purchase, part of the Dixon Property was zoned "General Business (GB)

---

[1] The Complaint identifies Willie A. Green, Sr. ("Green") as Plaintiff's CEO. Doc. 1 at ¶ 98. In its response to the Motion to Dismiss, Plaintiff also identifies Green as its "agent." Doc. 5 at 6.

commercial" and another part was zoned "Residential 10 (R10) single-family dwellings." Id. at ¶ 14.

On September 12, 2019, Plaintiff purchased an adjacent parcel located on E. Main Street in order to connect the Development to the city sewer line system and to give future residents of the Development ingress and egress. Id. at ¶ 30.

On September 25, 2019, Plaintiff submitted a zoning map amendment request, which included a site plan drawing for the Development and the proposed driveway (the "Zoning Application"). Id. at ¶¶ 33-34.

On October 17, 2019, Defendant's Planning and Zoning Board unanimously approved Plaintiff's request for a zoning change. Id. at ¶ 37.

In late October, however, a flyer began circulating among area homeowners "reflecting a false accusation that [Plaintiff] intended to construct low-income townhouses in their community, that would hurt home values because of the low-income development" (the "Flyer"). Id. at ¶ 38. The Flyer encouraged homeowners to protest the Zoning Application during an upcoming meeting of Defendant's City Council. Id.

On November 18, 2019, the City Council held a public hearing during which it considered Plaintiff's Zoning Application. Id. at ¶ 41. A local resident, Stacy Heavner, spoke against the Zoning Application and presented a "protest petition" with the signatures of local residents who opposed the rezoning. Id.

at ¶¶ 41-43.[2] Thereafter, the City Council, without explanation, voted five-to-one to deny Plaintiff's Zoning Application. <u>Id</u>. at ¶ 45.

On or about July 16, 2020, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD"), which complaint was assigned to HUD Investigator Charles Theodore. Doc. 1 at ¶ 52. In June of 2021, Theodore emailed Green a "HUD Closure" letter and a "Determination of No Reasonable Cause" letter. <u>Id</u>. at ¶ 54. In July of 2021, HUD issued a Final Investigation Report (the "HUD Report"). <u>Id</u>. at ¶ 57.[3]

The HUD Report referenced letters from various citizens that had been "allowed" by the City Council during the November 18 meeting, including one which specifically referred to the Development as "affordable housing…not in character with the neighborhood." <u>Id</u>. at ¶ 61. Plaintiff alleges that the HUD Report provides evidence that Plaintiff's Zoning Application was denied in violation of the FHA and State FHA "because of pressure from the public of their fears of an increase in crime, their prejudice against people of low-income and the unsubstantiated assumption of [sic] their home values will decline." <u>Id</u>. at ¶ 81.

---

[2] Plaintiff alleges that the submission of this "protest petition" violated North Carolina state law. <u>Id</u>. at ¶ 44 (citing N.C.G.S. § 160A-385(a)(1)).

[3] Copies of these items do not appear in the record.

Plaintiff alleges that from January 1, 2017 to December 31, 2019, the City Council voted on a total of seven zoning amendments and four special use permits, all of which involved the creation of multifamily housing, id. at ¶¶ 82, 83, and that Plaintiff's Zoning Application was the only one that was denied. Id. at ¶ 83.

Additionally, Plaintiff alleges that a separate entity, Cleveland County Community Development, is building housing in Shelby in the same price range as Plaintiff's Development, id. at ¶¶ 40, 88, 92, and that Defendant's Chief of Police and Housing Authority Director are both active Directors of that separate entity. Id. at ¶ 93.

## II.    Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the

complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### III.   Discussion

Defendant moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim. Doc. 3.

#### A. The FHA Claims

Congress enacted the FHA "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), or "refuse to sell or rent…or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a); see

6

also <u>Luckett v. Town of Bentonia</u>, No. No. 5:05-cv-144, 2007 WL 1673570, at *3 (S.D. Miss. June 7, 2007) ("The phrase 'otherwise make unavailable or deny' has been interpreted to reach a wide variety of discriminatory housing practices, including exclusionary zoning and the refusal to permit tying into a city's water and sewer systems through the denial of permits and/or the denial of annexation") (collecting cases). Additionally, the FHA prohibits any person or entity "whose business includes engaging in residential real estate-related transactions" from discriminating "against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a).

An FHA claim can proceed under "either a disparate-treatment or disparate-impact theory of liability…." <u>Reyes v. Waples Mobile Home Park Ltd. P'ship</u>, 903 F.3d 415, 421 (4th Cir. 2018). "Under a disparate-treatment theory of liability, a 'plaintiff must establish that the defendant had a discriminatory intent or motive,' whereas 'a plaintiff bringing a disparate-impact claim challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale.'" <u>Id</u>. (quoting <u>Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc.</u>, 576 U.S. 519, 524 (2015)).

Here, Plaintiff asserts that Defendant discriminated "in making available residential real-estate related transactions because of race, color, or [i]ntentional discrimination of land-use and zoning laws...." Doc. 1 at ¶ 102(1). Plaintiff does not specify whether its claim is based on a theory of disparate treatment or disparate impact. Id. Nonetheless, because an FHA plaintiff "is not required to elect which theory the claim relies upon at pre-trial, trial, or appellate stages," Reyes, 903 F.3d at 421, the undersigned has considered whether Plaintiff has stated a claim under either theory of liability. See e.g. National Fair Housing Alliance v. Bank of America, N.A., 401 F.Supp.3d 619, 631 (D. Md. 2019) ("[F]or purposes of a motion to dismiss for lack of legally cognizable discrimination, the court must discern if either predicate theory of discrimination is sufficiently pled").

### 1.  Disparate Impact

In Texas Dept. of Housing and Community Affairs v. Inclusive Communities Project, Inc., 576 U.S. 519, 524 (2015), the "Supreme Court confirmed that disparate-impact claims are cognizable under the FHA." Reyes, 903 F.3d at 423-424. These claims are analyzed using a three-step, burden shifting framework:

> Under the first step, the plaintiff must demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class. Under the second step, the defendant has the burden of persuasion to "state and explain the

valid interest served by their policies." Under the third step of the framework, and in order to establish liability, the plaintiff has the burden to prove that the defendant's asserted interested "could be served by another practice that has a less discriminatory effect."

Reyes, 903 F.3d at 424 (internal citations omitted, quoting Inclusive Communities, 576 U.S. at 524).

Here, Defendant's arguments pertain to the first step of this framework. Specifically, Defendant asserts that Plaintiff has failed to allege that the City Council's denial of the Zoning Application had the effect of denying housing opportunities based on race. The undersigned agrees.

To satisfy the causality requirement under the first step, a plaintiff must identify a specific practice being challenged and demonstrate how that practice has a "significantly disparate impact on the protected class." Reyes, 903 F.3d at 424 (internal quotations omitted). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." Inclusive Communities, 579 U.S. at 543.[4]

_____

[4] In the Motion to Dismiss, Defendant relies on Smith v. Town of Clarkton, a case that was decided before Inclusive Communities and in which the Fourth Circuit identified "four critical factors" that courts should use when considering disparate impact claims under the FHA. 682 F.2d 1055, 1065 (4th Cir. 1982). These factors included the strength of the plaintiff's showing of discriminatory effect and whether there was any evidence of discriminatory intent. Id. Plaintiff does not contend that the Smith factors should not be used in analyzing the Motion to Dismiss. See Doc. 5. However, neither party has cited authority specifically describing how the Smith factors should be employed after Inclusive Communities. See Reyes, 903 F.3d at 428

While Plaintiff alleges generally that the Development was intended to respond to the "need for additional multifamily housing units and more diversity to integrate the entire community," Doc. 1 at ¶ 10, Plaintiff has not made factual allegations regarding the demographics of the community or the race or color of persons who would purchase or reside in the townhouses. Compare Smith, 682 F.2d at 1068-1069 (the FHA was violated when a municipality "succumbed to…racially-inspired pressure" from citizens who mounted a successful public opposition campaign to block low-income housing that would have brought in more black citizens); McCauley v. City of Jacksonville, N.C., 829 F.2d 36, 1987 WL 44775, at *2 (4th Cir. 1987) (unpubl.) (plaintiff stated an FHA violation where he alleged the city suffered a housing shortage, his project was intended to provide low to moderate income housing that would be racially integrated, and the city's actions in blocking the project "had the purpose and effect of denying housing opportunities on the basis of race or color"); see also National Fair Housing Alliance v. Bank of American N.A., 401 F.Supp.3d 619, (D. Md. 2019) ("plaintiffs have alleged, using detailed dissimilarity indices as a baseline, that the defendants' policies forestall

---

(explaining that the holdings of the Fourth Circuit's "pre-*Inclusive Communities* FHA disparate-impact cases" – including Smith – are "consistent with" the "robust causality requirement" set out in Inclusive Communities).

housing integration and freeze existing racial segregation patterns…. Such factual allegations are enough to survive a motion to dismiss").

Further, while Plaintiff has alleged that the City Council's decision was based on opbjections from community members who mistakenly thought the Development would provide low-income housing, Plaintiff has not alleged that use of the term "low-income housing" was code for opposition to the Development based upon the potential occupants' race or color, or any other characteristic referenced by the FHA. See Doc. 1 at ¶¶ 38, 47, 61, 81; Martin v. Brondum, 535 Fed. Appx. 242, 244 (4th Cir. 2013) ("'[f]acially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker.' However, '[r]acially charged code words may provide evidence of discriminatory intent by sending a clear message and carrying the distinct tone of racial motivations and implications'") (internal citations omitted); see also 42 U.S.C. §§ 3604(a), 3604(b) (prohibiting discrimination based on "race, color, religion, sex, familial status, or national origin"); § 3605(a) (listing "race, color, religion, sex, handicap, familial status, or national origin").[5]

---

[5] Plaintiff alleges that in a November 10, 2016 "joint statement," the Department of Justice and HUD stated that: "'a city may not deny zoning approval for a low-income housing development…because the development may house residents of a particular protected class or classes whose presence, the community fears, will increase crime and lower property values in the surrounding neighborhood.'" Doc. 1 at ¶ 80. Plaintiff, however, has not alleged that the Development would have housed persons who were members of a particular protected class or classes.

Additionally, while Plaintiff alleges that its Application was the only project among several to be denied between January 1, 2017 to December 31, 2019, Doc. 1 at ¶¶ 82–83, Plaintiff does not provide any information regarding the race or color of the other applicants or the circumstances of those applications.

Finally, while Plaintiff alleges that it is a minority owned business with an African American president,[6] racial identity alone is not sufficient to establish discrimination. See generally Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 824 (4th Cir. 1995) (discussing an equal protection claim brought against a zoning board on the basis of plaintiff's national origin and stating that "racial or gender discrimination cannot be presumed from the mere fact that someone adversely affected by state action has a particular skin color or gender"); Holdmeyer v. Veneman, 321 F.Supp.2d 374, 381 (D. Conn. 2004) (explaining, in the context of a Title VII claim, that an assumption "that anytime an adverse decision was made by an individual of a different race, one would be justified in assuming that race played a role in that decision … would

---

[6] In its Reply, Defendant asserts that Plaintiff lacks standing because an LLC does not have a racial identity. Doc. 6 at 3. However, corporate entities have been found to have imputed racial identities. See Woods v. City of Greensboro, 855 F.3d 639, 646 (4th Cir. 2017) (plaintiff "set forth sufficient factual allegations to establish an imputed racial identity, which confers standing to assert a racial discrimination claim"); see also Bains, LLC v. Arco Products, Co., 405 F.3d 764, 770 (9th Cir. 2005) ("[W]hen a corporation has acquired an "imputed" racial identity, it can be the direct target of discrimination and has standing to pursue a claim under § 1981").

be baseless if not itself discriminatory"); see also Reyes, 903 F.3d at 421 ("'[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact"') (quoting Inclusive Communities, 576 U.S. at 542).

### 2. Disparate Treatment

"To state a claim for disparate treatment under the FHA, [Plaintiff] must allege that 'similarly situated persons or groups are subject to differential treatment,' and that 'the defendant had a discriminatory intent or motive.'" Montgomery County, Maryland v. Bank of America, 421 F.Supp.3d 170, 181 (D. Md. 2019) (quoting Potomac Grp. Home Corp. v. Montgomery Cty., Md., 823 F. Supp. 1285, 1295 (D. Md. 1993) and OT, LLC v. Harford Cty., Maryland, No. GLR-17-2812, 2019 WL 4598009, at *12 (D. Md. Sept. 23, 2019)).[7]

When determining whether a plaintiff has made plausible factual allegations of racially discriminatory intent or motive, a court may consider "(1) action that bears more heavily on one race than another, (2) clear patterns of action that are unexplainable on grounds other than race, (3) historical background of the action in question, (4) the sequence of events leading to the

---

[7] Defendant does not attempt to construe Plaintiff's FHA claim as being made under a disparate impact or disparate treatment theory. Instead, Defendant generally relies on Smith to argue that Plaintiff's FHA claim should be dismissed. See Doc. 4 at 7 ("The Fourth Circuit set out a 4-part test to determine whether there was a violation of the Fair Housing Act"). Though Smith was a disparate impact case, one of the Smith factors referenced "discriminatory intent," and Defendant's Motion to Dismiss does challenge the sufficiency of Plaintiff's allegations in that regard.

13

defendant's actions, [and] (5) departures from a defendant's regular course of action." National Fair Housing Alliance v. Bank of America, N.A., 401 F.Supp.3d 619, 644 n.8 (D. Md. 2019) (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266-67 (1977)).

Here, Plaintiff has alleged that opponents of the Development believed Plaintiff was planning to build low-income housing, that the opponents made statements regarding property values and crime rates, and that the City Council voted to deny the Zoning Application almost entirely based on public opinion. Doc. 1 at ¶¶ 65, 69, 72. Plaintiff has also alleged that Defendant departed from its normal procedures during the November 18 public hearing. Doc. 1 at ¶¶ 43, 44, 60.

However, Plaintiff has not alleged a pattern of conduct by Defendant, nor any relevant historical background regarding racial discrimination. Plaintiff has likewise not alleged how the denial of the Zoning Application weighs more heavily on persons of one race over another. Under these circumstances, the undersigned is not persuaded that Plaintiff has alleged sufficient facts to suggest that Defendant's denial of the Zoning Application reflected an intent to discriminate against the Development because of the race (or other protected characteristics) of future residents.

Likewise, Plaintiff has not alleged sufficient facts to suggest that Defendant intended to discriminate against Plaintiff because of Plaintiff's

racial identity. See Jones v. Marsh, No. 3:20-cv-00614-GCM, 2021 WL 3130876, at \*3 (W.D.N.C. July 23, 2021) ("even if the Complaint did allege that Plaintiff was a member of a protected class, it does not allege any facts to support that discriminatory actions were taken against Plaintiff on account of the purported class").

## B. Other Federal Claims

### 1. Conspiracy Claim

Plaintiff's response does not address Defendant's arguments regarding the adequacy of Plaintiff's conspiracy claim. See Doc. 5.

In addition, Plaintiff's Complaint does not set out factual allegations relative to a purported conspiracy. Plaintiff has not alleged facts that indicate the existence of an agreement between Defendant and others. See Mazza v. Deuley, No. 6:10–cv–00834, 2010 WL 3418318, at \*3 (S.D. W.Va. Aug. 26, 2010) ("The Fourth Circuit has observed that the 'principal element' [of a federal conspiracy claim] is an 'agreement or a meeting of the minds by defendants to violate the claimant's constitutional rights'") (quoting Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995)).

### 2.    Punitive Damages

Plaintiff's response likewise does not address punitive damages. <u>See</u> Doc. 5.

Further, Plaintiff has not provided any authority demonstrating that punitive damages are available against a municipality for violations of the FHA. <u>See</u> <u>White v. City of Annapolis by and through City Council</u>, 439 F.Supp.3d 522, 548 (D. Md. 2020) (punitive damages are "not available against local governments under the Fair Housing Act"); <u>see also</u> <u>Jennings v. Rous. Auth. of Balt. City</u>, No. WDQ-13-2164, 2014 WL 346641, at *9 (D. Md. Jan. 29, 2014) ("punitive damages are presumptively unavailable from municipalities for violations of federal law absent congressional authorization or compelling public policy reasons") (citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981)); <u>Brooker v. Altoona Housing Authority</u>, No. 3:11–CV–95, 2013 WL 2896814, at *27 (W.D. Pa. June 12, 2013) ("Although punitive damages are generally available in actions arising under the [Fair Housing Amendments Act of 1988], the relevant statutory provision contains no language suggesting that Congress intended to disturb the 'settled common-law immunity' from such damages enjoyed by governmental entities") (citing 42 U.S.C. § 3613(c)(1)); <u>Inland Mediation Bd. v. City of Pomona</u>, 158 F.Supp.2d 1120, 1158 (C.D.Cal.2001) ("Congress must expressly authorize awards of punitive damages against municipalities. The FHA's general provision regarding the

16

availability of punitive damages is simply not sufficient…") (relying on <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981)).

### C. Supplemental Jurisdiction

Plaintiff has alleged that this court has federal subject matter jurisdiction over its claims pursuant to 28 U.S.C. § 1331 "because the action arises under the laws of the United States, including the [FHA]." Doc. 1 at ¶ 1. To this point, the court has exercised supplemental jurisdiction over Plaintiff's state law claims. <u>See</u> 28 U.S.C. § 1367(a).

However, when all federal claims over which a court has original subject matter jurisdiction are dismissed, the court has the discretion to decline to exercise supplemental jurisdiction over any remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). <u>See</u> <u>Arrington v. City of Raleigh</u>, 369 Fed.Appx. 420, 422 (4th Cir. 2010) (holding that the district court should have *sua sponte* declined to exercise supplemental jurisdiction over state law claims once federal law claims were dismissed); <u>see also</u> <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995) (under § 1367(c), the district courts "enjoy wide latitude in determining whether or not to retain [supplemental] jurisdiction over state claims when all federal claims have been extinguished") (citing <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988)).

"[D]eclining supplemental jurisdiction where all federal claims have been dismissed is consistent with the general principle that federal jurisdiction

is limited." <u>Boone v. Duke Energy Carolinas, LLC</u>, No. 3:09-cv-122-RJC-DSC, 2009 WL 3839342, at \*2 (W.D.N.C. Nov. 12, 2009). "The Supreme Court has recognized that where a single federal claim is dismissed early in an action, the District Court has a 'powerful reason to choose not to exercise jurisdiction.'" <u>Id</u>. (quoting <u>Cohill</u>, 484 U.S. at 351).

As set out above, the undersigned finds that Plaintiff has not stated any federal claim. Considering that this matter is in its early stages, the undersigned will recommend that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claim(s) and dismiss such claim(s) without prejudice. <u>See</u> <u>Cohill</u>, 484 U.S. at 350 ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice").

## IV. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS:**

(1) that Defendant's Motion to Dismiss (Doc. 3) be **GRANTED** and that Plaintiff's federal claims be **DISMISSED**; and

(2) that the court decline to exercise supplemental jurisdiction over any state law claims, and that such claims be **DISMISSED WITHOUT PREJUDICE**.

Signed: May 26, 2022

W. Carleton Metcalf
United States Magistrate Judge

19

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).